UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

MICHELE KOCH and KENDAL KOCH, )
)
               Plaintiffs, )
)
vs. ) Case No: 4:22-cv-00229-HFS
)
KAYLA TAYLOR, *et al.* )
)
               Defendants. )

### SUGGESTIONS IN OPPOSITION TO DEFENDANTS MOTION TO STRIKE PLAINTIFFS NOTICE OF VOLUNTARY DISMISSAL

    Pro Se Plaintiffs, Michele Koch and Kendal Koch, pursuant to FRCP 11, 15, 19, 37 and 41, hereby submit their Suggestions in Opposition to the Defendants' Motion to Strike Plaintiffs' Voluntary Dismissal, respectfully request the Court to DENY the Defendants motion to strike and GRANT Plaintiffs' request to dismiss their Complaint WITHOUT prejudice, and for such other and further relief as the Court deems appropriate.

    Plaintiffs state the following:

    1.    In reviewing a pro se complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 8 (1976)); see also *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (recognizing that even after Twombly, the court "remain[s] obligated to construe a pro se complaint liberally").

    2.    The Defendants argument is evidence that they did receive Notice and that they do understand that Plaintiffs have requested to voluntarily dismiss their complaint WITHOUT prejudice.

3. **Pursuant to FRCP 41(a)(1)(B)**, Plaintiffs noticed voluntary dismissal should be a dismissal WITHOUT prejudice.

4. **Pursuant to the rules of evidence,** the Defendants cannot read Plaintiffs' minds, and the Defendants' **speculation** about Plaintiffs' **internal feelings** as to whether or not Plaintiffs fear for their child is inadmissible and **should be stricken** from their argument**.**

5. **Pursuant to the rules of evidence,** the Defendants cannot read Plaintiffs' minds, and the Defendants' **speculation** about Plaintiffs' **intentions** when they requested to dismiss their complaint without prejudice is inadmissible and **should be stricken** from their argument.

6. The Defendants have supported their argument only with Plaintiffs' depositions, and Plaintiffs' depositions are not evidence of their internal feelings and intentions.

7. The Defendants' evidence supports Plaintiff Michele Koch's claim that her response to inappropriate questioning about the Defendants' committing assault and battery of R.K. with an unknown weapon was interrupted and left Plaintiffs with **unanswered questions and valid concern for R.K.'s safety**.

8. Defendants' **"Exhibit E, 324:12-21"** confirms Plaintiff Michele Koch asked, **"To -- to do what? Shoot him with a Nerf --"** Defense Counsel conveniently has not submitted any video of herself when Plaintiff Michele Koch abruptly and inexplicably ends her question with Nerf--. The court reporter's **double dashes (--) indicate a pause**, not the end of Plaintiff's clarifying question. Defense Counsel interrupted Plaintiff after the word Nerf with nonverbal signals. Defense Counsel knew the questioning was inappropriate and she left Plaintiff with no answer as to what the Defendants believe they can do to R.K.

9. The Defendants' expectation that Plaintiff Michele Koch should have run from the deposition screaming in fear is unreasonable, irrational, and is not supported with any

evidence. Plaintiffs' child was safe at home. The Defendants were not present, did not have access to R.K.

10. Plaintiffs did not claim that they feared that Defense Counsel intended to harm R.K. Plaintiffs have claimed that Defense Counsel's inappropriate questioning served no purpose other than to intimidate and harass. **Plaintiff Michele Koch's demeanor during deposition was rational and reasonable.**

11. Plaintiffs' fears that the Defendants would harm R.K. are reasonable and justified. Employing persons who assault disabled students is not beneath the Pleasant Hill R-III School District. The Defendants have been aware since December 16, 2022, that Plaintiffs' now withdrawn witness, Stephanie Bordner, was **prepared to testify about the assault of her disabled child** by a Pleasant Hill R-III School District Aide and the **subsequent cover-up by these same Defendants** (Steven Meyers and the Board of Education). [**Ex. A, at 8-9, ¶22**].

12. A recent exchange with the Pleasant Hill R-III School District high-school principal is further evidence that **the district is currently creating a hostile environment for Plaintiffs** and that the district employs persons who do not seem to care about the injuries of disabled students in their care or on their property. Plaintiffs' special needs child J.K., with DOB 2007, fell down the school's stairs this past Monday, March 20, 2023, and broke his foot **[Ex. B]**. J.K. has not been able to return to school, yet. No one with school administration has reached out to Plaintiffs. When Plaintiffs asked to have a copy of the video to show J.K.'s doctor, the principal responded by calling Plaintiffs "outside entities." Plaintiffs are PARENTS. The principal did not even bother to ask how J.K. was doing in the email exchange. **[Ex. C].**

13. The Defendants' argument that Plaintiff Michele Koch was not questioned about the use of a weapon on her child is not supported by the Defendants own publicly posted school Policy JFCJ **[Ex. D]** that explains what the **Defendants consider a weapon to be.**

Per the Defendants, "A **weapon** is defined to mean one or more of the following:

1. A firearm as defined in 18 U.S.C. § 921.
2. A blackjack, concealable firearm, firearm, firearm silencer, explosive weapon, gas gun, knife, knuckles, machine gun, projectile weapon, rifle, shotgun, spring gun, switchblade knife, as these terms are defined in § 571.010, RSMo.
3. A dangerous weapon as defined in 18 U.S.C. § 930(g)(2).
4. All knives and **any other instrument or device used or designed to be used to threaten or assault,** whether for attack or defense.
5. **Any object designed to look like or imitate a device as described in 1-4**."

**Policy JFCJ is publicly posted at:**
**https://simbli.eboardsolutions.com/Policy/ViewPolicy.aspx?S=83&revid=bvtnyRPF6HslshX4ZjzrWZl2Q==&ptid=amIgTZiB9plushNjl6WXhfiOQ==&secid=p6v70fD4K8ukRv6vtplusTtSg==&PG=6&IRP=0&isPndg=false**

**(accessed 03/21/2023)**

14. The **Defendants downplaying of well documented injuries** caused by Nerf weapons is NOT supported by the American Academy of Ophthalmology **[Ex. E]** who state that projectile toys (weapons per the Defendants) are **not safe and can cause serious eye injuries** including **eye scrapes, bleeding, cataracts, increased eye pressure and permanent vision loss**. (https://www.aao.org/eye-health/news/really-toy-guns-are-dangerous-your-eyes Accessed 03/21/2023.)

15. The **Defendants downplaying of well documented injuries** caused by Nerf weapons is NOT supported by the manufacturers of Nerf products **[Ex. F].** The Nerf Hyper Mach-100 comes with a safety warning, full face-shield, and is not recommended for children as young as R.K. (https://nerf.hasbro.com/en-us/product/nerf-hyper-mach-100-fully-motorized-

[blaster-and-80-nerf-hyper-rounds-110-fps-velocity-easy-reload-100-round-capacity:B103CD4E-5DF6-4424-8A8A-EEE0643340F4](https://...) Accessed 03/21/2023)

16. Modified Nerf weapons can cause even more **significant injuries** including knocking a child out **[Ex. G]**. (**[https://www.cbsnews.com/chicago/news/nerf-gun-modifications-can-be-dangerous/](https://www.cbsnews.com/chicago/news/nerf-gun-modifications-can-be-dangerous/)** accessed 03/21/2023)

17. Under Missouri law, the injuries Nerf items are capable of causing meets the definition of assault:

**565.052. Assault, second degree**, penalty. — 1. A person commits the offense of assault in the second degree if he or she: (2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument; or (3) Recklessly causes serious physical injury to another person. The offense of assault in the second degree is a class D felony, unless the victim of such assault is a special victim, as the term "special victim" is defined under section 565.002, in which case it is a class B felony.

18. Under Missouri law, Nerf items can be dangerous instruments.

**556.061. Code definitions: (20) "Dangerous instrument",** any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or **other serious physical injury;**

19. Under Missouri law, Nerf items and modified Nerf items can be deadly weapons.

**556.061. Code definitions: (22) "Deadly weapon"**, any firearm, loaded or unloaded, or **any weapon from which a shot, readily capable of** producing death or **serious physical injury,** may be discharged, or a switchblade knife, dagger, billy club, blackjack or metal knuckles.

20. **Under Missouri law, 556.061. Code definitions. (44) "Serious physical injury"** = physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted **loss or impairment of the function of any part of the body.**

21. Vision is a function of a part of the body.

22. **According to these definitions and the Defendants policy JFCJ, Nerf manufactures weapons capable of causing "serious physical injury."**

23. Plaintiff Michele Koch's deposition took place Saturday, January 14, 2023. On Monday, January 16, 2023, **two days after being placed in fear for R.K.'s safety**, Plaintiff Michele Koch was **prescribed Trazodone,** an antidepressant used to treat depression and used off label for anxiety and to assist with sleep **[Ex. H].**

24. Plaintiffs are confident that their Motion for Summary Judgment was well plead and well supported despite their Pro Se status. Plaintiffs are devastated that their hard work was for nothing. However, it is not an adverse ruling to not secure Summary Judgment. Plaintiffs' case would continue to trial had Plaintiffs not requested a voluntary dismissal. The numerous inconsistencies between the Defendants' self-serving affidavits and the actual evidence would leave matters for trial.

25. In fact, **new evidence** that Defendant Kayla Taylor made an **intentional false report** to the Children's Division was obtained from exhibits that the Defendants submitted with their response to Plaintiffs motion for summary judgment.

26. Plaintiffs were not aware that Defendant Kayla Taylor reported to the Children's Division that "The student [R.K.] has reported that mom feeds him waffles, however, he needs to be gluten-free per mom." [**Ex. I, pg. 9, last paragraph**]. Defendant **Kayla Taylor lied** to the Children's Division.

27. Plaintiffs' copy of the Children's Division report does not contain this allegation **[Ex. J]**.

28. Defendant Kayla Taylor's sworn affidavit does NOT contain a statement about R.K. needing to be gluten-free and Plaintiff Michele Koch intentionally trying to harm R.K. by feeding him waffles **[Ex. K]**. It does not make sense that Defendant Kayla Taylor would fail to include this case-winning information in her sworn affidavit, unless the evidence doesn't match her statements to the Children's Division.

29. Most likely, Defendant Kayla Taylor did not want to lie in her sworn affidavit, because R.K. was **NOT supposed to be gluten-free**, and Plaintiffs made no such report to the Defendants.

30. The sworn affidavit of school nurse Nancy Keilholz states that on **January 21, 2021,** "Mom stated that R.K. had a gluten allergy in the past, but the waffle he ate was not gluten free. I encouraged Ms. Koch to cut wheat and gluten out of his diet." **[Ex. L, pg. 3, ¶21].**

31. School nurse Nancy Keilholz was well aware that R.K. was not supposed to be gluten-free, and her sworn affidavit confirms this. She states that "When the 2020-2021 school year started, the only medical issues Ms. Koch had informed me about regarding R.K. was an allergy to peanuts and asthma." **[Ex. L, pg. 1, ¶3].**

32. Nancy Keilholz's sworn affidavit does NOT match her notes in R.K.'s school medical record, produced by the Defendants with bates stamp PHSD_000166 – PHSD_000167, which states that on **January 21, 2021, "Mom emailed** the school nurse [Nancy Keilholz] at 0715 saying that R.K. is having a lot of stomach pain, student ate waffles for breakfast." **[Ex. M, pg. 1, entry highlighted by Plaintiffs with date 01/21/21].**

33. Nancy Keilholz notes in R.K.'s medical record does NOT match the email between Plaintiff Michele Koch and Nancy Keilholz on 01/21/21 initiating at 0715, produced by

the Defendants with bates stamp PHSD_001862, which does NOT show Plaintiff Michele Koch mentioned stomach pain or waffles. At 0715, Plaintiff Michele Koch wrote, "He's hurting really bad this morning." **[Ex. N]**

34. Nancy Keilholz's notes in R.K.'s school medical record state "...**nurse called mom**...nurse asked about gluten issues and mom stated that student had a wheat allergy in the past...**nurse suggested trying to cut out wheat/gluten foods** to see if this helps..." **[Ex. M, pg. 1, entry highlighted by Plaintiffs with date 01/21/21]**

35. R.K.'s Section 504 plan dated April 19, 2021, signed by witness Nancy Keilholz, Defendant Kayla Taylor, Defendant Terri Zimmerschied, and Defendant Lauren Goddard, confirms that **R.K. was NOT supposed to be gluten-free.** Disabling conditions are Peanut and tree-nut allergies, Asthma, Anxiety, Crohn's, Conversion Disorder with multiple symptom presentation (aka Functional Neurological Symptom Disorder), and Chronic Pain Syndrome. Excerpts attached **[Ex. O];** and **[Ex. P, ¶ IV]** (excerpt was not altered by Plaintiffs, handwriting was added by the district**.**)

36. The Defendants' own evidence PHSD_000003 – PHSD_000006 (an alleged summary of R.K.'s medical and educational records created by Defendants and their Counsel) confirms that at the beginning of the 2020-2021 school year, R.K.'s Section 504 plan was only for peanut and tree nut allergies and asthma. **[Ex. Q, pg. 1, entry dated 08/24/20]**. The phrase gluten-free cannot be found anywhere within the Defendants own fabricated evidence.

37. School nurse Nancy Keilholz made R.K. fearful of having a food allergy that Plaintiffs knew he did not have. **School nurse Nancy Keilholz was practicing medicine without a license** when she assumed the job of Plaintiffs' allergist, diagnosed R.K. with gluten/wheat allergies during his 2020-2021 school year, and expected that Plaintiffs were obligated to follow her unsolicited and unlawful medical advice.

38.     Defendant Kayla Taylor's decision to report Plaintiffs to the Children's Division for intentionally trying to harm R.K. with non-gluten free waffles based on the school nurse's delusions of being a doctor is **conscience shocking** and could have caused Plaintiffs to lose their children.

39.     Plaintiffs were unaware of the school nurse's involvement with their injuries, Section 504 retaliation, and the false report to the Children's Division when they filed their Complaint on April 6, 2022.

40.     **Pursuant to FRCP 19,** Plaintiffs failed to join the Pleasant Hill R-III School District's school nurse, Nancy Keilholz, as a required party to their Complaint, and their Complaint should be dismissed WITHOUT prejudice.

41.     Plaintiffs were also unaware that Defendant Kayla Taylor reported to the Children's Division that "[R.K.'s] last day of in-person classes was on December 14, 2020" [**Ex. I, pg. 14, first paragraph**].  Defendant **Kayla Taylor lied.**

42.     Defendant Kayla Taylor's report to the Children's Division does NOT match R.K.'s attendance records (obtained prior to deletions made by the Defendants) which show that R.K. was sent home from school on December 15, 2020, by the school nurse, Nancy Keilholz, and was quarantined for remaining three days of the semester [**Ex. R, pg. 1, entry dated 12/15/2021, highlight added by Plaintiffs**]**.**

43.     Defendant Kayla Taylor's report to the Children's Division does NOT match the Defendants own evidence with bates stamp PHSD_000166 – PHSD_000167 (R.K.'s student medical records) which show that R.K. was still attending school in-person on January 12, 2021, and that Defendant Kayla Taylor personally sent R.K. home [**Ex. S, pg. 1, entry dated 01/12/2021, highlight added by Plaintiffs**]**,** indicating that Defendant Kayla Taylor was well

aware that R.K. was attending school in-person after December 14, 2020, and that her statement to the Children's Division in March 2021 was a **bold face and malicious lie.**

44. Defendant Kayla Taylor lied under oath when she stated in her sworn affidavit "I became concerned about R.K.'s attendance after he stopped attending in mid- December 2020." **[Ex. K, pg. 1, ¶5]**

45. Defendant Kayla Taylor's sworn affidavit and statements made to the Children's Division do NOT match R.K.'s attendance records or R.K.'s school medical data both of which are physical documents and are actual evidence.

46. Defendant Kayla Taylor's unsupported statements that R.K. stopped attending school in-person in December 2020 is further evidence that the Defendants, in consultation with Defense Counsel, had motivation to fabricate an education record that states R.K. stopped attending school in-person on December 15, 2020 **[Ex. Q, pg. 1, entry dated 12/15/20]**.

47. Plaintiffs were also unaware that Defendant Kayla Taylor reported to the Children's Division that the 2020-2021 school year was the first year that concerns were raised about R.K.'s health [**Ex. I, pg. 14, first paragraph**]. Defendant Kayla Taylor **lied**.

48. The Pleasant Hill R-III School District has recognized R.K. as disabled since he enrolled in 2018. He entered the school district with a Section 504 plan for asthma, and life-threatening peanut and tree nut allergies. He has had a Section 504 plan in the Pleasant Hill R-III School District since 2018 [**Ex. P, ¶ III, Plan History**].

49. R.K.'s Section 504 plan was modified during the 2019-2020 school year while at Defendant Kayla Taylor's Elementary School. R.K. had begun oral immunotherapy for his peanut allergy and required extra precautions while at school. The school's Section 504 Building Coordinator, Defendant Terri Zimmerschied, ignored Plaintiff Michele Koch for months when she tried to get urgent protections added to R.K.'s Section 504 plan [**Ex. T**].

50. Defendant Kayla Taylor's allegation that R.K. did not have health concerns until the beginning of the 2020-2021 school year was a **bold face and malicious lie**.

51. Plaintiffs were also unaware that Defendant Kayla Taylor reported to the Children's Division on April 12, 2021, that she had spoken with Plaintiff Kendal Koch, and that he was embarrassed that the school knew or perceived that mom was making up R.K.'s ailments **[Ex. I, pg. 12, an entry dated 04/12/2021, highlight added by Plaintiffs].** Defendant Kayla Taylor **lied**.

52. Defendant Kayla Taylor did not speak to Plaintiff Kendal Koch about any of her allegations, and Plaintiff Kendal Koch never said that he was embarrassed nor that mom was making up R.K.'s ailments. All of the ailments/symptoms that Defendant Kayla Taylor reported to the Children's Division as being allegedly prompted by mom, were added to R.K.'s Section 504 plan on April 19, 2021 **[Ex. P, ¶ III – VII],** because they were legitimate ailments/symptoms that Defendant Kayla Taylor had refused to accommodate since Plaintiffs first request on January 6, 2021.

53. The picture painted by Defendant Kayla Taylor that Plaintiff Kendal Koch was embarrassed by his wife (Plaintiff Michele Koch), unaware of his child's medical conditions, and was working with the school as a mediator was a **malicious lie.** Defendant Kayla Taylor did not care if her allegations caused Plaintiffs to lose their children nor ruin their marriage. Defendant/Superintendent Steven Meyers and the Board of Education Defendant's decisions to defend Defendant Kayla Taylor's actions is evidence of **corruption** within the district.

54. **Pursuant to FRCP 15**, in order to receive justice, Plaintiffs' Complaint requires an Amendment. Plaintiffs have obtained new evidence to support new claims including but not limited to the following: Defense Counsel's involvement in fabricating R.K.'s education records immediately after Plaintiffs reported disability discrimination and harassment, the school nurse

diagnosing R.K. with a gluten allergy without having a license to practice medicine nor parent permission, and the unpaid forced labor of Plaintiffs, who are a teacher and substitute teacher, and were required to be R.K.'s teachers while he was enrolled in the Pleasant Hill R-III School District as a disabled student being denied access to education and receiving a discriminatory and inaccessible five (5) hours of district provided instruction per week.

55. **Pursuant to FRCP 11(b)(1)** the Defendants hostile motion is made in bad faith in that it is meant to harass Plaintiffs and will needlessly increase costs to the taxpayers of the Pleasant Hill R-III School District (which includes Plaintiffs) to whom the Defendants owe a fiduciary duty.

56. **Under Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA,** the Defendants' motion is prohibited retaliatory conduct in that the Defendants' hostile and accusatory motion was filed **after** Plaintiffs provided Notice to the Defendants through their Counsel that a new Complaint had been filed with the Office of Civil Rights.

57. **Under Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA,** the Defendants' hostile and accusatory motion is prohibited retaliatory conduct in that it is meant to deter Plaintiffs from engaging in their federally protected right to file a new discrimination and retaliation Complaint with the Office of Civil Rights, participate in an investigation, oppose ongoing discrimination and retaliation, and obtain a remedy for the ongoing effects of discrimination and retaliation.

58. **Under Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA,** the Defendants' specific request for an adverse action from the Court due to Plaintiffs' communications with the Office of Civil Rights is the definition of what is considered prohibited retaliatory conduct under these laws.

59. **Under Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA**, Defense Counsel Jessica Bernard's personal statement within the Defendants' motion to strike that she had any concern Plaintiff Kendal Koch would harm R.K. is prohibited retaliatory conduct meant to **intimidate** Plaintiffs and cause fear that another false report will be filed against Plaintiffs.

60. Defense Counsel's personal statements within their clients' motion, and their participation in this matter as advocate/witness prejudices Plaintiffs and is unethical per the Professional Rules of Conduct.

61. **Pursuant to FRCP 19**, Plaintiffs **failed to join a required party**. Defendant Kayla Taylor has identified teacher **Jacob Vanslyke** as an additional party responsible for Plaintiffs injuries caused by the false report to the Children's Division. Plaintiffs Complaint should be dismissed WITHOUT prejudice **[Ex. K, pg. 4, ¶37].**

62. **Pursuant to FRCP 19**, Plaintiffs failed to join Children's Mercy social worker Megan Drovetta (who resides in the State of Kansas, but was working in Kansas City, MO when she contributed to Plaintiffs' injuries). This Court has jurisdiction. After speaking with Defendant Kayla Taylor, Megan Drovetta contacted the Children's Division to perpetuate the lies told about Plaintiffs.

63. **Pro Se Plaintiffs will suffer hardship** from continuing this suit without representation who can properly file an amended complaint with the new claims, join the additional required parties, and argue the crime/fraud exception to attorney/client privilege.

64. **Plaintiffs will suffer hardship** and will be denied their Federally protected right to a remedy under Section 504 and Title II's anti-retaliation provision if their Complaint is not dismissed WITHOUT prejudice.

65. Plaintiffs' request for voluntary dismissal WITHOUT prejudice is submitted in good faith.

66. **Pursuant to FRCP 37(b)(2),** the Defendants' numerous inconsistencies between their sworn affidavits and the actual evidence indicate bad faith and misconduct, and Plaintiffs **seek sanctions.**

**IN CONCLUSION,** District Courts may opt to dismiss WITHOUT prejudice for a variety of reasons. A court may allow a plaintiff to voluntarily withdraw from the suit through a **Rule 41(a)** dismissal without prejudice if the plaintiff would suffer hardship from continuing the suit. Also, under **Rule 37(b)(2)**, a court may dismiss without prejudice to sanction a party acting in bad faith.

Plaintiffs are still learning about false allegations made by Defendant Kayla Taylor as explained herein. The Defendants are aware of what other allegations Defendant Kayla Taylor made and have withheld this information from Plaintiffs. Plaintiffs have the right to know the allegations against them. It is evidence of due process violations that Plaintiffs are learning of new allegations two years after they complained of a false report by Defendant Kayla Taylor.

**FURTHER,** The Defendants' complaint about their expenses is absurd and not Plaintiffs responsibility. The Defendants chosen Counsel failed to assert a dispositive defense prior to filing and Answer to the Complaint. The Defendants asserted 48 defenses in Ct. Doc. 11, including numerous claims that "Plaintiffs fail to state a claim upon which relief can be granted." The appropriate remedy is for the Defendants to file a malpractice claim against Defense Counsel for ineffective assistance of counsel.

The Defendants can reduce their liability to Plaintiffs by remedying the effects of discrimination and retaliation immediately and by retaining Counsel that will ensure they are in

compliance with the law and who will assert dispositive defenses prior to Answering any future Complaints filed by Plaintiffs.

**FURTHER,** Plaintiffs respectfully request the Court to order the defendants and their counsel to preserve all communications, documents, phone messages, notes, emails including attachments, letters, education records, and all other evidence subject to discovery.

Plaintiffs respectfully request a **ruling in their favor to Dismiss their Complaint WITHOUT prejudice** and for such other and further relief as the Court deems just and proper.

Respectfully submitted by,

/s/ *Michele Koch*

----------------------------------

Michele Koch
kochmichele@live.com

/s/ *Kendal Koch*

----------------------------------

Kendal Koch
kkoch@bssd.net
704 Old Stage Rd Pleasant Hill, MO 64080
816-547-8912
PRO SE PLAINTIFFS

## CERTIFICATE OF SERVICE

Plaintiffs, Michele Koch and Kendal Koch, Pro Se, hereby certify that on this 23rd day of March 2023, pursuant to FRCP 11, 15, 19, 37 and 41, that they have served their Suggestions in Opposition to the Defendants' Motion to Strike Plaintiffs' Voluntary Dismissal and Exhibits via electronic mail upon:

Jessica M. Bernard MO #58980
jbernard@gmschoollaw.com

Anthony S. McDaniel MO #68767

amcdaniel@gmschoollaw.com

ATTORNEYS FOR DEFENDANTS

/s/ *Michele Koch*
------------------------------------------------
Michele Koch
kochmichele@live.com

/s/ *Kendal Koch*
-------------------------------------------------
Kkoch@bssd.net
Kendal Koch
PRO SE PLAINTIFFS