## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MICHELE KOCH and KENDAL KOCH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No: 4:22-cv-00229-HFS |
| | ) | |
| KAYLA TAYLOR, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' SUGGESTIONS IN SUPPORT OF THEIR

## RULE 60 MOTION FOR RELIEF

Pro Se Plaintiffs, Michele Koch and Kendal Koch, pursuant to FRCP 60(a), hereby submit this Motion for correction of a clerical mistake or oversight in regards to the Order entered on April 10, 2023 (ECF Doc. 84); and pursuant to FRCP 60(b)(3), hereby submit this motion for relief from the Order entered on December 28, 2022 (ECF Doc. 53), the Order entered on March 22, 2023 (ECF Doc. 81), and the Order entered on April 10, 2023 (ECF Doc. 84) on the grounds of fraud, misrepresentation, and other misconduct by Defense Counsel that prevented Plaintiffs from fairly presenting their case.

After the final Order was entered on Aril 10, 2023, dismissing Plaintiffs case with prejudice, Plaintiffs obtained the Defendants financial records that show by clear and convincing evidence that they have engaged in criminal conduct with Defense Counsel and/or their employer, Guin Mundorf LLC, and paid thousands of dollars in public school funds for the fabrication of evidence that is material to Plaintiffs' retaliation and due process claims.

1

Plaintiffs respectfully request that the Court correct the clerical mistakes explained herein; re-open Plaintiffs' case; vacate the Court's Orders at ECF 53, ECF 81, and ECF 84; deny Defendants Motion for an Extension of Time (ECF Doc. 47); grant Plaintiffs' Motion to Disqualify Defense Counsel (ECF 54); grant default judgment in Plaintiffs' favor for Summary Judgment (ECF 36); refer Defense Counsel Jessica Bernard and Anthony McDaniel to the Office of Chief Disciplinary Counsel; and provide any and all other relief the Court deems just and proper. In support, Plaintiffs state the following:

## FRCP 60(a)

Pursuant to FRCP 60(a), the Court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.

The Order entered on April 10, 2023 (ECF Doc. 84) misstates the facts. The Order incorrectly states, "The only testimony about shooting involved plaintiff's testimony where she [Plaintiff Michele Koch] stated that Plaintiff's father had, on occasion, used a Nerf gun to "test" RK's reported symptoms." (ECF Doc. 84 pg. 1-2).

This misrepresents the facts in two ways:

1. Plaintiff Michele Koch's father is Mr. Guyton, and his good name has never been brought into these matters.
2. The evidence shows that Defense Counsel, Jessica Bernard, is the individual who made the statement during Plaintiff Michele Koch's January 14, 2023 deposition that [R.K.'s] father had on occasion, used a Nerf gun to "test" RK's reported symptoms.

Contrary to what the Order states, Plaintiff Michele Koch made no such testimony. The Order should be corrected to reflect the fact that Defense Counsel Jessica Bernard represented to

Plaintiff Michele Koch that R.K.'s father had used a Nerf gun on his child and that Jessica Bernard asked Plaintiff Michele Koch if the Defendants could do the same.

The statement made by Jessica Bernard is a material statement relied on by the Court in making a ruling on Order ECF Doc. 84. It would be a miscarriage of justice to allow a material statement made by Defense Counsel to be attributed to Plaintiff Michele Koch and be mislabeled as her testimony in the Court's Order.

A review of the portion of Plaintiff's deposition that includes Defense Counsel's statement will determine if this was a simply a clerical mistake or oversight that is correctable pursuant to FRCP 60(a); or, if this misstatement of material fact was intentionally included in Defense Counsels' proposed Order for ECF Doc. 77 (Motion to Strike) and is a perpetuation of fraud by Counsel which, pursuant to FRCP(b)(3), constitutes grounds for relief from the Order.

## RELEVANT BACKGROUND AS TO FRAUD

Plaintiffs filed suit against the Defendants on April 6, 2022, alleging Retaliation under Section 504 of the Rehabilitation Act and Title II of the ADA and violation of their 14th Amendment right to Due Process and Equal Protection.

The allegations include the fabrication and manipulation of R.K.'s education records. Specifically, a four-page document titled "Summary of [R.K.'s] medical/educational history for 2020-2021" which does not match R.K.'s original student records. The "summary" is rampant with lies. Some of those lies include the development of three separate "Support Plans" and "agreements" between parents and the school district.

Allegations related to the "summary" in the Complaint include the following:

1. "Education records were fabricated to show that Kayla Taylor called a meeting on January 6th to discuss an alleged "first support plan to get R.K. to attend school regularly." (Ex. A - ECF Doc. 1 at 34, ¶ iii);

2. "No such first attendance support plan nor any other document identifying the cause of alleged attendance issues and how the PHSD would address them exists in R.K.'s Official Education Records." (Ex. A - ECF Doc. 1 at 34, ¶ vi);

3. "Education records were fabricated to show that Kayla Taylor called a meeting on February 2nd, to discuss an alleged "second support plan" to get R.K. to attend school regularly." (Ex. B - ECF Doc. 1 at 43, ¶ d);

4. "No such second attendance support plan nor any other document identifying the cause of alleged attendance issues and how the PHSD would address them exists in R.K.'s Official Education Records." (Ex. C - ECF Doc. 1 at 44, ¶ iii);

5. "This fabricated record was reported to the CD as evidence that Kayla Taylor addressed educational neglect with mom." (Ex. C - ECF Doc. 1 at 44, ¶ v);

6. "R.K.'s educational records were fabricated to show that Kayla Taylor called a meeting on February 24th, to discuss an alleged "third support plan" to get R.K. to attend school regularly." (Ex. D - ECF Doc. 1 at 48, ¶ c);

7. "No such third attendance support plan nor any other document identifying the cause of alleged attendance issues and how the PHSD would address them exists in R.K.'s Official Education Records." (Ex. D - ECF Doc. 1 at 48, ¶ iii);

8. "RK had zero undocumented absences when Kayla Taylor alleges a first attendance support plan was made." (Ex. E - ECF Doc. 1 at 61, ¶ vi);

9. "RK had zero undocumented absences when Kayla Taylor alleges a second attendance support plan was made." (Ex. E - ECF Doc. 1 at 61, ¶ vii);

10. "Kayla Taylor's report to the CD concerning medication and an ER visit was deceitful. Manipulated education records confirm she did not have reasonable suspicion of an untreated illness or injury." (Ex. F - ECF Doc. 1 at 77, ¶ v);

11. "Kayla Taylor's willingness to manipulate education records to support false accusations showed a callous indifference for plaintiffs Federally protected rights." (Ex. F - ECF Doc. 1 at 77, ¶ vi);

12. "During the plaintiffs' AC grievance "investigation," the Board of Education (BOE) was presented with an educational record dated April 19, 2021, Summary of medical/educational history 2020-2021, and copies of mom's emails showing the correct dates, details, and time of events. In a written statement, the BOE denied that fabrications and manipulations were rampant in the Summary created by the district." (Ex. G - ECF Doc. 1 at 91, ¶ 33)

13. "Proof of Kayla Taylor's knowledge is apparent in the inconsistencies in R.K.'s educational records where data deletion was attempted. All data detailing his PHSD COVID protocol related absences was deleted from the Official Record of the Summary of his educational and medical history for 2020-2021." (Ex. H - ECF Doc. 1 at 15, ¶ i);

14. "Kayla Taylor knowingly provided fabricated educational records to the CD. Kayla Taylor claimed R.K. was regressing academically. Education records, and Lauren Goddard confirmed, he was progressing academically. According to his assessments, he was also doing better than the majority of students attending school in-person." (Ex. I - ECF Doc. 1 at 30-31, ¶ d);

15. "Mom's request on Jan 6th was manipulated in R.K.'s official education records to show, instead, that mom made this request on January 5th." (Ex. A - ECF Doc. 1 at 34, ¶ ii);

16. "Education records were fabricated to show that "all agreed" it would be best for R.K. to attend school in-person, because "he seems to really enjoy school and does fine when he is here." (Ex. J - ECF Doc. 1 at 40, ¶ k);

17. "Education records were fabricated to state that it was approved for R.K. to come to school with a temperature if he has no other symptoms." (Ex. K - ECF Doc. 1 at 41, ¶ m);

18. "Educational records were fabricated to show that homebound was not ruled out, and that mom agreed to virtual learning as opposed to homebound." (Ex. L - ECF Doc. 1 at 46, ¶ h);

19. "Lauren Goddard silenced mom and dad each time they tried to correct the fabricated and manipulated educational and medical records she was reading out loud during the meeting;" (Ex. M - ECF Doc. 1 at 85, ¶ 28(a)(a));

20. "The PHSD is responsible for R.K.'s educational records, and for intentionally fabricating and manipulating the records, then presenting those fabricated and manipulated records as evidence to the CD [Children's Division]." (Ex. N - ECF Doc. 1 at 89, ¶ 31(c)(ii));

21. "This is a violation of adopted PHSD school board policy GBCG - regarding staff conduct: #7 Maintain records as required by law...Employees must not falsify records, create misleading records or compromise the accuracy and security of district data." (Ex. N - ECF Doc. 1 at 89, ¶ 31(c)(ii)(1));

22. "Plaintiffs had provided evidence that Steven Meyers was complicit with the fabrication, manipulation, and deletion of education records;" (Ex. O - ECF Doc. 1 at 90, ¶ 32 (b)(ii));

23. "Mom presented Steven Meyers and the BOE with evidence that plaintiffs were aware, and had proof, that Steven Meyers and the BOE had used fabricated evidence to obtain

the "findings" and "determinations" they needed to rule in the PHSD's favor." (Ex. P - ECF Doc. 1 at 92, ¶ c);

24. "Education records were manipulated to state that on "12/15/20 R.K. stopped attending school in person." (Ex. Q - ECF Doc. 1 at 36, ¶ c(i)(1));

25.  "Maintaining accurate education records is a school board policy. Deleting records to intentionally hide PHSD knowledge of COVID absences, manipulates that data, violates the policy, and plaintiffs' rights." (Ex. R - ECF Doc. 1 at 38, ¶ f(i)(2));

26. "R.K.'s official education records were manipulated to show that mom's February 1st and 2nd requests were, instead, one request made on January 31, 2021." (Ex. B - ECF Doc. 1 at 43, ¶ c(i));

27. "Education records were manipulated to omit and change the title and purpose of the 504-document mom signed to a "release and exchange of information form." (Ex. S - ECF Doc. 1 at 49, ¶ f);

28. "Education records were manipulated to omit knowledge of mom's emailed report of transporting R.K. to the doctor's herself. The educational record now reads, "Declined transport." (Ex. T - ECF Doc. 1 at 76, ¶ b - b(i));

29. "Kayla Taylor reported the manipulated record to the CD as evidence of Emotional Abuse/Rejection." (Ex. T - ECF Doc. 1 at 76, ¶ d);


The Defendants submitted their Answer and Affirmative on June 6, 2022 (ECF Doc. 11).

On October 17, 2022, the Defendants responded to Interrogatory #4 (see attached **Ex. U, pg. 3**) which asks the Defendants to "identify who made the "Summary of [R.K.'s] medical/educational history for 2020-2021" (identified in Plaintiffs Complaint as fabricated) and

Plaintiffs referenced the Defendants bates stamped documents PHSD_000003 – PHSD_000006 (see attached **Ex. V**). The Defendants asserted attorney/client privilege and failed to provide any names.

## DUE DILLIGENCE TO EXPOSE FRAUD

Plaintiffs performed their due diligence in trying to determine Defense Counsels' personal involvement with documents PHSD_000003 – PHSD_000006 and their liability for the harm Plaintiffs had attributed entirely to the Defendants. Plaintiff Michele Koch sent an email to Defense Counsel Jessica Bernard and Anthony McDaniel on October 18, 2022 (email correspondence attached as **Ex. W**). In this email, Plaintiff Michele Koch asked to "meet and confer" (**Ex. W pg. 2 ¶ 1**) and specifically stated the following:

> "We would also like to discuss your objection to our questions about the summary of R.K.'s records, PHSD_000003 – PHSD_000006, as being attorney/client privilege. We submitted this summary of records to you as Plaintiffs' Exhibit A (prior to your submission to us), which we obtained from our child's student records. Defendant Brennaman stapled the summary to the back of the 504 Plan dated April 19, 2021. Your document shows the staple holes, and shows that an altered document was submitted in response to requests for "Support Plans" as they are kept in the normal course of business without removing anything stapled or otherwise attached.
>
> Not only that, but are we to understand from your objection that what we have alleged as an element of retaliation, the fabrication of our child's records, specifically, the "summary" containing hearsay, incorrect data, material omissions, and the mentioning of three non-existent "Support Plans," was not created by the Defendants, but by their attorneys?
>
> PHSD_000003 - PHSD_000006, which we presented to the Board of Education Defendants as evidence of fabricated records by Defendants Kayla Taylor, Terri Zimmerschied, and Lauren Goddard, was already known to the BOE as being

8

created by their own attorneys? You, the attorneys, fabricated records that biased the BOE against us during our grievance appeal?" (**Ex. W pg. 2 ¶¶ 8-10**).

Defense Counsel, Jessica Bernard responded and in part stated, (emphasis added) "We are not going to respond to unfounded allegations of "attorney misconduct and liability." However, we note that an objection was asserted to Request No. 4 to provide a thorough and complete response reflecting that **counsel were consulted when preparing the cited document**" (see attached **Ex. W pg. 1 ¶ 3**).

Despite this admission, Defense Counsel would later knowingly make false statements in the Defendants' Opposition to Summary Judgment pleading where the Defendants denied that an attorney was called in to consult with the manufacturing of the "Summary of [R.K.'s] medical/educational history for 2020-2021." (Ex. X - ECF 71 at 39, response 113).

On November 12, 2022, Plaintiffs sent Defense Counsel a 21-Day Notice of Motion for Terminating Sanctions (**Ex. Y**), cited violation of Missouri Rules of Professional Misconduct 4-1.2(f), 4-3.3(a)(3), 4-3.3(b), and 4-3.7, and filed a Certificate of Service with the Court (ECF Doc. 27).

On November 14, 2022, Plaintiffs Supplemented their 21-Day Notice with additional discovery issues (**Ex. Z**) and filed a Certificate of Service with the Court (ECF Doc. 28).

On November 15, 2022, Plaintiffs served their Third Set of Requests for the Production of Documents (**Ex. A-1**) and a Certificate of Service was filed with the Court (ECF Doc. 29). This set of requests was for the original records that were documented in the "summary" (**Ex. V**) and requests the metadata.

A "meet and confer" took place via phone conference with Defense Counsel Jessica Bernard and Anthony McDaniel on November 21, 2022. Email correspondence from Defense

Counsel, Jessica Bernard, states that Defense Counsel was disputing whether or not the conference was a "meet and confer." (**Ex. B-1 pg. 2**).

On November 21, 2022, Plaintiffs served a Second Supplement to the 21-Day Notice (**Ex. C-1**) citing violation of rules of professional conduct and additional discovery issues with the Defendants' first and second supplemental responses to discovery requests. A Certificate of Service was filed with the Court (ECF Doc. 30).

By December 11, 2022, Defense Counsel had not held a single deposition, requested a single document be produced, asked a single interrogatory, or asked for a single admission to fact. Despite ongoing discovery issues and Defense Counsels' failure to pursue a defense for their clients, Plaintiffs did not file a Motion for Sanctions. Instead, Plaintiffs chose to proceed on the merits of their case and filed a Summary Judgment Motion (ECF Docs. 36-37, Exhibits at ECF Doc. 41).

On December 14, 2022, the Defendants made their first Request for the Production of Documents, the majority of which Plaintiffs had already voluntarily provided five (5) months earlier. (**Ex. D-1**)

On December 16, 2022, Plaintiffs added attorneys Ryan Fry, Jessica Bernard, and Anthony McDaniel (all with Guin Mundorf LLC) to their Initial Disclosures as material witnesses, explained their personal knowledge in detail (**Ex. E-1 pg. 5-7**)**,** and filed a Certificate of Service with the Court (ECF Doc. 40).

On December 19, 2022, Defense Counsel noticed depositions of Plaintiffs (ECF Doc. 42-43).

On December 21, 2022, the Defendants filed a Motion for Extension of Time to Reply to Plaintiffs Summary Judgment, failed to provide the required Defendants' affidavit, but were granted an extension regardless. (ECF Doc. 47).

On December 29, 2022, Plaintiffs filed a Motion to Disqualify Defense Counsel (ECF Doc. 54-55). Also, on this day Plaintiffs filed a Motion to Stay Discovery and for an Order of Protection (ECF Doc. 56). These Motions were not ruled on until March 22, 2023 (ECF Doc. 81).

Despite these pending motions and an objection to Defense Counsel conducting a deposition in an action in which they were identified as material witnesses and liable for Plaintiffs' alleged injuries (ECF Doc. 65), Defense Counsel Jessica Bernard conducted the deposition of Plaintiff Kendal Koch on January 11, 2023, and the deposition of Plaintiff Michele Koch on January 14, 2023.

During Plaintiff Michele Koch's deposition, Defense Counsel, Jessica Bernard, entered the Defendants bates stamped documents PHSD_000003 – PHSD_000006 (the "summary," **Ex. V**) into the record and placed an exhibit sticker on it.

The Defendants submitted their Opposition to Summary Judgement on February 2, 2023 (ECF Doc. 71) and make the following statements about the "Summary of [R.K.'s} medical/educational history for 2020-2021" (emphasis added):

> "**Defendants identified the District staff who prepared the Summary document**...To the extent Plaintiffs are implying an improper "manufactured document," they cite no evidence in support of such an inference. Furthermore, Plaintiff Michele Koch (when provided with a copy of the Summary) was

specifically informed that **it was not intended to be comprehensive.**" (Ex. F-1 - ECF Doc. 71 pg. 6 ¶ 1, response #7).

Similar sentences are repeated throughout the Defendants Opposition to Summary Judgment. Defense Counsel knows of their own involvement (or their employer's) but allows the Defendants to accept all the blame for preparing the "summary."

Throughout the Defendants statement of facts in their Opposition to Summary Judgment, they avoid using the phrase "Support Plan." This is demonstrated at ECF Doc. 71 pg. 41, ¶¶ 7, 8, 10; pg. 42, ¶¶ 16, 17; and pg. 43, ¶¶ 24. (Ex. G-1)

Not a single affidavit provided by the Defendants in support of their Opposition to Summary Judgment states that they developed "Support Plans" and again they only use the word "plan."

In their pleading, the Defendants denied that Defense Counsel had personal knowledge and involvement with the creation of the "Summary of [R.K.'s] medical/educational history for 2020-2021." (Ex – H-1 - ECF Doc. 71 at 34, response #93);

In their pleading, the Defendants denied that they knowingly produced altered documents in response to Plaintiffs requests for the alleged first, second, and third "Support Plans." (Ex. I-1 - ECF Doc. 71 at 37, response #106).

(The Defendants three alleged "Support Plans" are attached as Ex. J-1 and the corresponding Discovery responses are attached as Ex. K-1 at 1-2, ¶¶ 1-3)

In their pleading, the Defendants defend the contents of the "Summary of [R.K.'s] medical/educational history for 2020-2021" (which is also now the first, second, and third

alleged "Support Plans") by stating that it was not intended to be comprehensive. (Ex. F-1 - ECF Doc. 71 at 6, response 7; Ex. L-1 - at 10, response 18; Ex. - M-1 - at 13, response 26; Ex. N-1 - at 14, response 28; Ex. O-1 - at 18, response 42; Ex. P-1 - at 30-31, response 85; and Ex. P-1 - at 31, response 86.)

In their pleading, the Defendants denied that an attorney was called in to consult with the manufacturing of the "Summary of [R.K.'s] medical/educational history for 2020-2021." (Ex. Q-1 - ECF 71 at 39, response 113.)

## GOVERNING STANDARD

[f]raud on the court, though not easily defined, can be characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense. A finding of fraud on the court is justified only by the most egregious misconduct directed at the court itself, such as bribery of a judge or jury or **fabrication of evidence by counsel,** and must be supported by clear, unequivocal and convincing evidence. *Landscape Properties, Inc. v. Vogel*, 46 F.3d 1416, 1422 (8th Cir. 1995) (citations omitted).

It is the law that fraud must be proved by clear and convincing evidence. *Continental Nat. Bank v. Holland Banking Co., 8 Cir., 66 F.2d 823, 830.*

It must also appear that the fraud was practiced in the very act of procuring the judgment or order sought to be vacated or modified and that it was extrinsic or collateral as distinguished from intrinsic fraud. *United States v. Throckmorton, 98 U.S. 61, 25 L. Ed. 93; Ph nix Finance Corporation v. Iowa-Wisconsin Bridge Co., 8 Cir., 115 F.2d 1 (reversed on other grounds...)*

**ARGUMENT**

After the Order was entered on April 10, 2023, Plaintiffs received an email from the Board of Education Defendants' secretary, Cathy Jobe, dated April 21, 2023, which shows by clear and convincing evidence that Defense Counsel and/or their employer, Guin Mundorf LLC, were paid to create the "Summary of [R.K.'s] medical/educational history for 2020-2021," (also known as pages 3-6 the first, second, and third alleged "Support Plans") and that Defense Counsel knowingly and willfully counseled the Defendants to lie to the Court in their Opposition to Disqualify Defense Counsel, their Motion for an Extension of Time, and their Opposition to Summary Judgment. Cathy Jobe states the following (emphasis added);

> "Ms. Koch, I apologize for any confusion. You requested "**All invoices from Guin Mundorf LLC covering all services related to the creation of an education record for my child, [R.K.], titled 'Summary of [R.K.'s] medical/educational history for 2020-2021.'**" You further identified "this education record was created for use during a section 504 meeting held at the Elementary School on April 19, 2021," and that "the 'summary' was most likely created between the dates of March 22, 2021 and April 19, 2021." We scheduled a district employee to search our legal "invoices from Guin Mundorf LLC" for the information outlined above on April 20, 2023. Notwithstanding receiving no payment for the research time, **we have identified the information you are seeking which resulted in the identification of the following legal expense in the April invoice: "April 19, 2021 Draft medical/educational history** for meeting." This legal expense was invoiced to the District on April 30, 2021 with the remainder of the District's legal expenses. This task took 1.5 hours and as such **totaled $352.50**. The District is waiving all fees for research to determine this information. This completes your sunshine records request originally sent on April 7, 2023. Thank you for your time. Cathy Jobe, Board Secretary Custodian of Records." (**Ex. R-1**)

Contrary to Ms. Jobe's statement of the costs paid to Guin Mundorf LLC to manufacture four-pages of education records, the Guin and Mundorf LLC statement of fees for April 2021 shows that the legal services obtained, and the amount paid for consultation and creation of the "summary" far exceeds an April 19, 2021, entry for $352.50. THOUSANDS of dollars from the public school's funds were spent consulting about a summary and timeline, reviewing voluminous records, strategizing against parents, using the "summary" to stop an OCR investigation, eavesdropping on Plaintiffs during meetings, AND creating a **comprehensive** summary and timeline. (**Ex. S-1**)

Contrary to the Defendants Opposition to Summary Judgment pleading in which they state numerous times that the "summary" was not intended to be comprehensive, financial records prove Guin Mundorf LLC billed for a comprehensive summary and timeline. Defense Counsel knew that claiming the "summary" was not intended to be comprehensive was a lie when they submitted their pleading.

Defense Counsel filed the Defendants Opposition to Disqualify Defense Counsel and intentionally misrepresented the facts and engaged in witness intimidation tactics by accusing Plaintiffs of baseless accusations and requested sanctions in response to Plaintiffs efforts to expose Defense Counsel's fraud on the Court.

Defense Counsel knowingly lied in this motion when they stated (emphasis added),"

> "Plaintiffs' entire "fabrication of records" argument in their pending Motions surrounds a single "Summary" document **prepared by various District employees**, including some of the named Defendants. It was prepared in early/mid-April 2021, for use in a Section 504 meeting attended by District employees and the Plaintiffs. [DOC. 55, p. 3, ¶2]. It is titled "Summary of [RKs] medical/education history for 2020-2021." [DOC. 55-2, p. 3-6]. The "Summary" reviews various events during the 20-21 school year and includes reference to three Support Plans. Plaintiffs rely on this one "Summary"

document, four (4) pages in length, in support of their argument that Defendants and their counsel fabricated records." (Ex. T-1 - ECF Doc. 68 at 13, ¶ II.)

Defense Counsel failed to inform the Court that they and/or their employer were paid to create the "summary" and allowed the Court to be deceived into believing that Plaintiffs were lying about Defense Counsels' personal involvement and liability in these matters.

The Defendants and their Counsel knowingly and willfully lied to this Court throughout these proceedings. They submitted pleadings and affidavits in bad faith with the intent to deceive, harass, obstruct the fair administration of justice, and interfere with Plaintiffs' right to fairly present their case to this Court.

Defense Counsel, again, misrepresents to the Court that the "...timeline is not comprehensive and was intended for the purposes of the 504 meeting as a general overview." (Ex. U-1 - ECF Doc. 68 at 14, ¶ 2), knowing that they billed for the creation of a "comprehensive" summary and timeline.

Whether it was the Defendants scheme to create fabricated education records (the "summary") or Defense Counsel's, the indisputable fact is that a discussion to create a "summary" of false records took place, was billed for by Defense Counsel's employer, Guin Mundorf LLC, and Defense Counsel chose to counsel the Defendants to lie, file false pleadings, and force Pro Se Plaintiffs to rebut a four-page fabricated document rather than disclose their involvement to the Court.

The "summary" is easily proved false in that it is not what it claims to be. It is neither a medical nor educational history for R.K.'s 2020-2021 school year. It is so vague that it cannot be traced back to the Pleasant Hill R-III School District, Plaintiffs' child, or Plaintiffs themselves. It is a garbage document not worth the thousands of dollars it cost to fabricate. It was created with

the intention of committing a crime (conspiracy against rights) and is intentionally absent of any names so as to certainly not link any Defendant or attorney to it.

The co-conspirators (Defense Counsel, their employer, and the Defendants) made a plan to create a "summary" of false education records; Guin Mundorf LLC created the records according to plan; the Defendants paid for the "summary" and consultations; the co-conspirators furthered the conspiracy against Plaintiffs rights when they used the "summary" to harm Plaintiffs.

Plaintiffs were harmed  when the "summary" was submitted  to the Office of Civil Rights (as confirmed in the statement of fees dated April 6, 2021, states, "...review records and emails to create lengthy timeline of events needed for Office of Civil Rights complaint..." (**Ex. S-1**)) to interfere with Plaintiffs OCR complaint and pending investigation; Plaintiffs were harmed when the "summary" was used to harass Plaintiffs during a Section 504 meeting on April 19, 2021 (a meeting in which the statement of fees confirms Defense Counsel and/or their employer were paid to remotely participate in without Plaintiffs' knowledge); Plaintiffs were harmed when the "summary" was used as evidence during a closed session, "impartial" Board of Education discrimination, harassment, and retaliation hearing on July 22, 2021 to make a determination in their own favor (another meeting the statement of fees confirms Defense Counsel and/or their employer were paid to remotely participate in without Plaintiffs' knowledge (**Ex. V-1**)); Plaintiffs have been harmed during these Court proceedings when the "summary" was presented as evidence of the development of three individual "Support Plans" (**Ex. J-1 and K-1**); and Plaintiffs were harmed when Defense Counsel presented the "summary" during deposition, knowing it was false, and entered it into the Court record on January 14, 2023.

Plaintiffs will continue to be harmed by the "summary" until they no longer have to defend themselves from the lies it contains, the falsity of it is exposed, and the Defendants and their Counsel are held accountable for misusing school funds to create it.

It stands to reason that if Defendant Kayla Taylor did not make a false report to the Children's Division, and did not retaliate against plaintiffs for engaging in protected activities, then they would not need to pay Defense Counsel and/or their employer to make a false "Summary" of R.K.'s student records, nor would they need to keep it a secret from this Court.

R.K. is going into the 7th grade this year. He has had a Section 504 plan since kindergarten. His medical/educational records have NEVER been "summarized" for a Section 504 meeting before the meeting on April 19, 2021. The only difference is that Plaintiffs made an Office of Civil Rights complaint and the Defendants needed to create a defense for Defendant Taylor, Zimmerschied, and Goddard's actions.

Plaintiffs have attempted to obtain additional evidence about the "Summary," from Defendant Brennaman, who is also the school's Compliance Officer, but she refuses to answer Plaintiff's FERPA request for explanations about the "summary."

Plaintiff Michele Koch emailed a document containing 33 reasonable questions about the "summary" to Defendant Brennaman, Defendant Meyers, and Cathy Jobe, on April 7, 2023 (**Ex. W-1**)

Defendant Brennaman responded by citing a statue applicable to IEP meetings, not FERPA, and refused to answer a single question about the "summary," including questions as simple as "Why was this record created?"; "Why aren't R.K.'s class grades included in this record summarizing his educational history?"; and "What are "Support Plans?" (**Ex. X-1 pg. 2, response to request #2**)

## CONCLUSION

Due to Defense Counsels' fraud, misrepresentations, and misconduct Plaintiffs were denied an opportunity to fairly present their case to the Court. Defense Counsel should not have represented the Defendants in these matters due to their personal involvement with the claims and Plaintiffs' alleged injuries. Plaintiffs were correct to confront Defense Counsel about their personal involvement in these matters and to file a motion to disqualify Defense Counsel.

Defense Counsel and/or their employer fabricated evidence in a scheme to conspire against Plaintiffs' rights. This conduct is egregious, and it is a fraud on the Court for Defense Counsel to have defended the "summary" and counseled the Defendants to lie about their attorney's involvement in their pleadings while intimidating Plaintiffs for trying to expose it.

Had the Defendants obtained counsel who did not have a financial and personal interest in the outcome of Plaintiffs case, they most likely would not have been advised to lie. Guin Mundorf LLC would have been held accountable for the advice that has subjected the Defendants to civil and criminal liability. It's reasonable to conclude that Defense Counsel fears a malpractice lawsuit, and their decision to remain involved is out of self-interest and not out of any lawful duty owed to the Defendants.

Had Defense Counsel not had a need to protect themselves, Plaintiffs would not have been subjected to Defense Counsels' misconduct and witness intimidation tactics as explained in ECF 72 and ECF 82 where Pro Se Plaintiffs, who are also witnesses, explain their reasonable fear for R.K.'s safety and the actual harm Plaintiffs' other children were being subjected to by the school district immediately preceding Plaintiffs request to withdraw.

Defense Counsel and their employer, Guin Mundorf LLC, are a threat to the public and the integrity of the legal profession. They should be barred from practicing in this Court.

**WHEREFORE**, Plaintiffs respectfully request a ruling in their favor and for the following relief from the Court:

1.  Correction of the clerical mistake that identifies a statement made by Defense Counsel Jessica Bernard as Plaintiff Michele Koch's testimony;

2.  Correction of the clerical mistake that infers Plaintiff made any testimony about her father;

3.  re-open Plaintiffs' case;

4.  vacate the Court's Orders at ECF 53, ECF 84, and ECF 81;

5.  deny Defendants Motion for an Extension of Time (ECF Doc. 47);

6.  grant Plaintiffs' Motion to Disqualify Defense Counsel (ECF 54);

7.  grant default judgment in Plaintiffs' favor for Summary Judgment (ECF 36);

8.  refer Defense Counsel Jessica Bernard and Anthony McDaniel to the Office of Chief Disciplinary Counsel;

9.  Grant Plaintiffs a restraining order against Guin Mundorf LLC attorneys preventing them from creating any records for Plaintiffs' children and preventing them from attending Plaintiffs' school meetings whether in person, remotely, or by eavesdropping.

10. any and all other relief the Court deems just and proper.

Respectfully submitted by,

/s/ *Michele Koch*

-----------------------------------
Michele Koch
kochmichele@live.com

/s/ *Kendal Koch*

----------------------------------

Kendal Koch
kkoch@bssd.net
704 Old Stage Rd Pleasant Hill, MO 64080
816-547-8912
PRO SE PLAINTIFFS


## CERTIFICATE OF SERVICE

Plaintiffs, Michele Koch and Kendal Koch, Pro Se, hereby certify that on this 10th day of June 2023, that they have served their NOTICE OF RULE 60 MOTION FOR RELIEF via electronic mail upon:


Jessica M. Bernard MO #58980
jbernard@gmschoollaw.com

Anthony S. McDaniel MO #68767
amcdaniel@gmschoollaw.com

ATTORNEYS FOR DEFENDANTS


/s/ *Michele Koch*

-----------------------------------------------

Michele Koch
kochmichele@live.com

/s/ *Kendal Koch*

-----------------------------------------------

Kkoch@bssd.net
Kendal Koch
PRO SE PLAINTIFFS